**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ENDURANCE WARRANTY SERVICES, L.L.C., an Illinois limited liability company,** ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | **Jury Demand** |
| **EXCLUSIVE NATIONAL AUTO CLUB, a New Jersey limited liability company,** ) ) ) ) | |
| Defendant. ) | |

## PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Endurance Warranty Services, L.L.C. ("Endurance" or "Plaintiff"), for its Complaint for Injunctive and Other Relief against Defendant Exclusive National Auto Club, LLC ("ENAC"), states as follows:

## NATURE OF THE ACTION

1. This is an action for injunctive relief and damages arising out of ENAC's trademark infringement, false advertising, and unfair competition. Endurance brings its claims under the Lanham Act and state common law. Relevant to this lawsuit, rather than fairly compete, ENAC has engaged in a multi-jurisdictional scheme where they are targeting and contacting Endurance's customers, by using deceptive websites and/or online advertising through which ENAC holds itself out to be "Endurance Customer Service," and when Endurance customers call ENAC, instead of Endurance, which it meant to reach, ENAC employs false and deceptive practices to steal customers from Endurance and induce Endurance's customers to purchase ENAC's competing vehicle service contract products. Endurance now seeks temporary, preliminary, and permanent injunctive relief to stop ENAC's Lanham Act violations, as well as seeking monetary damages and other relief through this lawsuit.

2.      Endurance was founded in 2006, and is one of the nation's premier direct-to-consumer providers of vehicle service contracts. Vehicle service contracts (sometimes referred to colloquially as extended auto warranties) supply consumers with peace-of-mind after a vehicle manufacturer's original warranty expires, and provides coverage for the cost of future repairs to consumers.

3.      Specifically, vehicle service contracts help consumers avoid potential out-of- pocket repairs not otherwise covered by typical automobile insurance. Vehicle service contracts are aftermarket contracts offered by companies to cover future repair costs for when a vehicle manufacturer's original warranty expires.

4.      Through its service model, Endurance provides comprehensive and customer-centric auto protection. Endurance is one of the largest providers of vehicle protection coverage in the nation and is backed by A-rated insurance companies. Endurance enjoys an excellent reputation and the esteem of the consumers it serves, and of the industry, generally. Endurance is also fairly unique from other service providers in the vehicle service contract industry in that it does not outsource administration of claims to third parties, though it does sell some vehicle service contracts for other third-party administrators.

5.      Endurance has worked hard through the years to develop its reputation under the Endurance brand and works harder to attract and maintain its clients. Endurance utilizes state-of-the-art, customized Customer Relationship Management software to identify and store customer leads and spends millions per year to market its products across a host of different platforms. Through these leads, Endurance prepares customized quotes for each potential customer, based on individualized information unique to the customer, such as the make and model of the car, year of manufacture, odometer readings, and other items.

6. Endurance is the owner of several trademark registrations, including U.S. Trademark Registration No. 4,781,129 for the mark "Endurance" for the services "providing extended warranties on motor vehicles." See Exhibit A (Registration Certificate).

7. Endurance has received numerous calls that ENAC is levying false accusations against Endurance in an effort to move, often successfully, customers from Endurance to ENAC.

8. ENAC has developed and launched at least one website and/or online advertisement where it impersonates Endurance, identifying itself as the Endurance customer service line. Screen printouts of one such website sent by a customer in December 2025 and another identified by an Endurance employee in late February 2026 are attached as Exhibits B and C.

9. When Endurance customers search for Endurance through an online search engine, they land on ENAC's online advertisement, which includes the copy "Endurance Phone Number – Call Endurance," and mistakenly call ENAC, when they had intended to reach Endurance. According to the customers and adding to their confusion, ENAC's website appears at or near the top of the search results.

10. Indeed, as apparent from Exhibit B, ENAC's website appears above Endurance's actual website.

11. On information and belief and based on the placement of ENAC's ad above Enurance's legitimate website, ENAC is paying for keyword searches with Endurance's Endurance trademark, so that their website is populated at or near the top of the search results, further evidencing their intent to confuse consumers. By purchasing Endurance keywords through search engines, such as Google and Bing, ENAC is causing consumers searching for Endurance's customer service number to receive a search result list including ENAC's website.

12. Once ENAC has deceived an Endurance customer into contacting ENAC or

initiated contact with an Endurance customer, in the course of these calls, ENAC or its agents make specific, demonstrably false statements or highly misleading statements about Endurance, with the intent of inducing consumers to terminate their Endurance vehicle service contracts and purchase ENAC's competing vehicle service contract.

13. Among these statements, ENAC or its sales representatives are telling Endurance customers *__falsely__* that: (a) there was a "red flag" on the consumer's Endurance policy; (b) Endurance is going out of business; (c) Endurance is bankrupt; (d) Endurance is not accredited by the Better Business Bureau; (e) Endurance is not paying its claims; (f) Endurance's policies are no longer in effect; (g) the consumer's vehicle is no longer covered by Endurance; (h) ENAC is "part of" Endurance; and (i) because of this, Endurance is issuing refunds and consumers are supposed to switch plans and enter into new vehicle service contracts with ENAC.

14. Endurance possesses recorded conversations in which its customers relay the false and misleading statements that ENAC's sales representatives are making to Endurance's customers.

15. These recorded calls show that consumers are identifying "Omega" and ENAC, by name, as being involved in this scheme. On information and belief, ENAC is holding itself out to customers as "Omega."

16. ENAC's conduct has led to the actual loss of business for Endurance.

17. By making these false and misleading statements after driving customers to its website through use of Endurance's Endurance trademark, ENAC has unlawfully diverted consumers from Endurance to ENAC, damaged Endurance's goodwill and credibility in the marketplace, and unlawfully distort competition in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

18. Before Endurance's customer relationships and goodwill are further eroded,

Endurance seeks temporary, preliminary, and permanent injunctive relief to protect the intrinsic value of its customer relationships and goodwill, at a minimum.

19.     Endurance also seeks all of the damages it has suffered as a result of ENAC's ongoing actions.

20.     Endurance further seeks enhancement of damages and its reasonable attorneys' fees because of ENAC's willful and malicious acts.

## PARTIES

21.     Plaintiff Endurance Warranty Services, L.L.C. is an Illinois limited liability company, with its principal place of business in Northbrook, Illinois.

22.     Defendant Exclusive National Auto Club, LLC is a New Jersey limited liability company, with its principal place of business in Brick, New Jersey.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Endurance's Lanham Act claims raise federal questions. This Court has supplemental jurisdiction over the remaining claims, pursuant to 28 U.S.C. § 1367(a).

24.     This Court has personal jurisdiction over ENAC, and venue is proper in this District under 28 U.S.C. § 1391(a), because ENAC committed and continues to commit tortious acts in and related to this State, as well as having performed acts that constitute doing business within the state of Illinois.

25.     As set forth herein, ENAC has intentionally directed tortious conduct against Endurance, which they know to be located in Illinois.

26.     In particular, ENAC has created web pages or websites or online search engine advertisements, to which ENAC drives traffic through use of Endurance's Endurance trademarks,

and through which ENAC attempts to confuse Endurance customers into directing their calls, not to Endurance, but to ENAC.

27. Once these customers reach ENAC, ENAC then engages in false advertising, making literally false and/or materially misleading statements about Endurance and its products, all in an attempt to divert business from Endurance, an Illinois-based company, to ENAC.

28. Under the Illinois Long-Arm Statute and United States Supreme Court, Seventh Circuit, and Northern District of Illinois case law, this conduct by ENAC gives this Court specific personal jurisdiction over ENAC.

29. Venue also is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

30. Specifically, ENAC sells vehicle protection plans nationwide, including to consumers in Illinois and within this judicial district. Additionally, Endurance's principal place of business is in Northbrook, Illinois, and it regularly conducts business in Illinois.

## EVENTS GIVING RISE TO THIS ACTION

### ENDURANCE'S BUSINESS

31. Since its founding in 2006, Endurance has worked hard to become the nation's premier direct-to-consumer provider of vehicle service contracts. Endurance provides the most comprehensive and customer-centric auto protection, and is one of the largest providers of vehicle protection coverage in the United States.

32. In connection with the sale and marketing of its products, Endurance owns and utilizes a series of federally-registered trademarks. Through these marks, along with its ongoing national advertising, marketing, and promotional efforts, Endurance has generated substantial goodwill and consumer recognition.

33. By virtue of Endurance's extensive, continuous, and exclusive promotion and use of the Endurance marks to advertise, promote, distribute, and sell vehicle service contracts, consumers across the United States recognize the Endurance marks and the Endurance brand as belonging to Endurance; associate the services offered and sold under the Endurance marks exclusively with Endurance; and recognize and trust Endurance as the source of the vehicle service contracts offered for sale and sold under the Endurance trademarks.

34. Endurance has earned valuable goodwill from being recognized, associated with, and identified by consumers and the trade, in part because of its federally-registered trademarks.

35. Endurance sells and markets its plans throughout the United States, with the exception of California (in which it uses a third-party administrator to sell a different product than a vehicle service contract). Throughout its extensive and ongoing national advertising, marketing, and promotional efforts, Endurance has generated and continues to maintain substantial goodwill and customer recognition.

36. Because of its customer service, Endurance is a Better Business Bureau "Accredited Business."

37. Being an "Accredited Business" means that Endurance has demonstrated to the BBB that it has a commitment to ethical business standards, including building trust, advertising honestly, telling the truth, being transparent, honoring promises, being responsive, safeguarding privacy, and embodying integrity.

38. Endurance has further demonstrated to the BBB that it is a reputable company, licensed, bonded, and insured; resolves complaints in a timely manner; follows through on its promises; and is committed to safe online transactions.

39. Endurance's recognition extends beyond the BBB, including but not limited to,

winning three separate awards from Consumer Affairs' Buyers Choice Awards in 2025 for Best Customer Service, Best Value for Price, and Best Coverage Options, Newsweek's America's Best Online Platforms 2025, and receiving 21 separate Stevie Awards since 2014, including three in 2025 for Contact Center of the Year, National Sales Team of the Year, and Fastest Growing Company of the Year.

40. Endurance offers a series of different products, ranging from comprehensive coverage to more affordable plans that cover core components. Endurance's vehicle service contracts cover newer, low-mileage vehicles, as well as older, high-mileage cars.

41. Because of its customer service model and the coverage it provides, Endurance enjoys an excellent reputation in the industry and with the consumers it serves.

42. As part of its business model, when Endurance acts as the seller, it sells an Endurance contract the vast majority of the time, and unlike other service providers, Endurance is the direct administrator of its own vehicle protection plans. For these contracts, Endurance handles everything with the consumer directly, from quote to claim, meaning no middleman. As a small part of its business, Endurance will sell contracts on behalf of other third-party administrators, which administer those plans. This paragraph does not speak to those third-party administrator plans, but only the Endurance plans that Endurance sells and administers.

43. Because Endurance sells the vehicle service contract and administers the claims, Endurance is able to more quickly and effectively administer claims brought by its consumers of Endurance plans.

44. As part of its business model and plan value for the plans it sells and administers, Endurance pays the mechanic directly for auto repairs, including for all parts and labor.

45. Adding more value to customers, Endurance's protection plans are accepted by

licensed repair facilities nationwide. For approved claims, Endurance also provides rental coverage with no deductible for up to five days, and provides towing at no cost for a certain preset amount of mileage.

46.     Endurance also offers a number of other benefits through its plans, making it one of the most attractive options for individuals in the market for a vehicle service plan and leading to it earning a host of awards.

47.     To generate sales of vehicle service contracts to its customers, Endurance's customer leads are pre-generated. Endurance refers to its leads as "engaged leads," and these leads are stored in Endurance's CRM (Customer Relationship Management) software, and provided to its sales representatives to call.

48.     The other means by which Endurance obtains leads is by individuals calling Endurance in response to Endurance's marketing materials. All leads contacted by a sales representative are pre-generated. Sales representatives do not engage in cold calling. Leads are not developed by sales people, but rather through prospective customers either calling Endurance directly or filling out a webform expressing interest.

49.     Endurance's customers seek out Endurance for vehicle service contracts, not the other way around.

50.     Endurance almost exclusively sells vehicle service contracts lasting four-years or longer, with the full cost of the contract spread out over a set period of time, but paid on a monthly basis until the cost of the vehicle service contract is paid.

51.      Endurance's pricing is generated on a car-by-car basis, based on things such as the make and model of the car, year of manufacture, odometer readings, and other items. With these specific inputs, Endurance's proprietary software generates a price proposal.

52. Because Endurance's customers seek out Endurance, not the other way around, there is no centralized location through which Endurance's customer list can be acquired by legitimate means externally.

53. Endurance's customer list is among its most valuable confidential information, and constitutes a trade secret.

54. Endurance's trade secret customer list is not known in the industry or by the general public and gives Endurance a competitive advantage to win and retain business with its customer base. The value of such information remaining confidential and a trade secret is immeasurable, and is a driving factor in Endurance's several hundred million dollar per year business.

55. Unauthorized use of Endurance's trade secret customer list negatively and significantly impacts Endurance's ability to retain business. While Endurance does not have direct evidence of ENAC having misappropriated Endurance's trade secret customer list, Endurance is highly concerned about the means by which ENAC appears to be targeting Endurance's customers.

56. Phrased differently, it is impossible that ENAC happens to be contacting Endurance's customers "randomly" and at will by merely opening the "phone book" and dialing the entire U.S. population.

57. Rather, it is far more probable that ENAC has acquired a list of Endurance's customers and are contacting them and lying to them about Endurance's viability as a seller and administrator of vehicle service contracts for the sole aim of diverting them to ENAC's competing business.

**ENAC KNOWINGLY MAKES FALSE STATEMENTS ABOUT ENDURANCE TO STEAL CUSTOMERS FROM ENDURANCE**

58. Similar to Endurance, ENAC is engaged in the business of selling vehicle service contracts.

59. ENAC sells contracts that Endurance believes, relevant to this lawsuit, are written for Omega.

60. ENAC solicits business from consumers throughout the United States.

61. On March 23, 2026, Endurance, through its counsel, sent a cease and desist letter to ENAC regarding the false statements that its sales representatives were making to Endurance's customers about Endurance and its business viability. A copy of Endurance's cease and desist letter is attached as Exhibit D.

62. Starting no later than July 2025, Endurance began receiving a series of cancellation calls and other calls from its customers.

63. The common theme from each of these calls was that a third-party, pretending to be Endurance, was "intercepting" Endurance customers' calls when those consumers found the number for "Endurance" and reached ENAC (on information and belief, sometimes holding itself out to customers as "Omega") instead of Endurance.

64. Once on the phone with Endurance's customers, those consumers reported to Endurance that ENAC spread a series of lies, including that their Endurance policies are "red flagged"; Endurance's policies or coverage for the consumer's vehicles covered through Endurance no longer applied; Endurance was not paying its claims; Endurance was refunding the consumer's payments for a period of time; and the consumer needed to sign up with ENAC now to have coverage. Often, the consumer contacted Endurance to find out why they were still being charged by Endurance, thinking that they had cancelled or transferred their coverage based on ENAC's false statements.

65. ENAC is specifically targeting Endurance's customers by maintaining websites that are falsely holding themselves out to be "Endurance," when they have no affiliation with Endurance,

whatsoever.

66.     Endurance's customers initiate the transaction with Endurance by either providing their contact information on an Endurance website, on a contracted marketing service provider's website, or by reaching out directly.

67.     The fact that these customers are specifically targeted and told false information about Endurance, appears to be part of a deliberate scheme by ENAC to confuse and defraud these customers for the purpose of selling competing products to those customers.

68.     Endurance has not and would not authorize a third party, including ENAC, to attempt to move Endurance's customers to an unrelated third party, like ENAC, either directly or through a misleading website.

69.     This conduct by ENAC is unauthorized, is wrongful, and violates the Lanham Act and other common laws.

70.     Endurance's customers have relayed the following lies and misleading statements made by ENAC's sales representatives:

      a.   there was a "red flag" on the consumer's Endurance policy;

      b.   Endurance is going out of business;

      c.   Endurance is bankrupt;

      d.   Endurance is not accredited by the Better Business Bureau;

      e.   Endurance is not paying its claims;

      f.   Endurance's policies are no longer in effect;

      g.   the consumer's vehicle is no longer covered by Endurance;

      h.   ENAC is "part of" Endurance; and

      i.   because of this, Endurance is issuing refunds and consumers are supposed to switch plans and enter into new vehicle service contracts with ENAC.

71. None of these statements are true.

72. In some of the calls that Endurance received, consumers indicated that ENAC's representatives possessed all of their information, including name, VIN, and miles on the car, leading the customers to believe that ENAC's statements about Endurance were truthful.

73. In these calls, many consumers reported that they called "Endurance," were told that the customer's current plan did not cover their vehicle, to sign up for a new "Endurance" plan, and that they would be reimbursed for their old plan. Months later, the customer would call the real Endurance, and ask about their refund and why their old plan was not canceled. On the call with Endurance, the customer would identify information that ENAC's representatives told them that led these consumers to believe that ENAC was Endurance and would handle the reimbursement, many times leading consumers to double pay Endurance and ENAC for several months before they realize they are paying for two vehicle service contracts at once.

74. As a result of ENAC's false or misleading statements of material fact to Endurance's customers, Endurance has lost a number of customers of which it knows about and potentially countless others that did not provide this detail in cancelling their vehicle service contracts.

75. As discussed above, ENAC also has developed and launched at least one website where they impersonate Endurance, identifying itself as the Endurance customer service line, through an online advertisement.

76. When Endurance customers search for Endurance through an online search engine, they land on an online advertisement for ENAC's website, which falsely identifies ENAC as "Endurance," leading consumers to mistakenly call ENAC, when they had intended to reach Endurance. According to the customers and adding to their confusion, ENAC's website appears at or near the top of the search results.

77. On information and belief, ENAC is paying for keyword searches with Endurance's Endurance trademark, so that its online advertisement or website is populated at or near the top of the search results, further evidencing ENAC's intent to confuse consumers. By purchasing Endurance keywords through search engines, such as Google and Bing, ENAC is causing consumers searching for Endurance's customer service number to receive a search result list including ENAC's phone number and website.

78. ENAC is either doing this directly or is using third-party advertisers or lead generators. Lead generators are marketers who help vehicle service contract sellers, like ENAC, identify individuals interested in purchasing a vehicle service contract. Here, ENAC is either directly engaging in this conduct, or is hiring third parties who are and are doing so with either ENAC's express knowledge or with no oversight b ENAC. In either case, Endurance's trademark is being infringed for ENAC's direct benefit.

79. On or about March 23, 2026, outside counsel for Endurance sent a cease and desist letter to Nationwide by overnight and certified mail.

80. Endurance demanded that ENAC cease its improper and unfair competition by spreading lies about Endurance. (*See* Exhibit D.)

81. ENAC never responded to Endurance's letter, and the calls that Endurance receives from customers questioning Endurance based on the false claims made by ENAC persist to this day.

**EFFECT OF ENAC'S CONDUCT**

82. With ENAC using literally false and materially misleading statements about Endurance and its continuing viability as a seller and administrator of vehicle service contracts, Endurance stands to lose substantial business as well as losing the value of its goodwill and customer relationships, which cannot be adequately addressed at law. ENAC's conduct violates

the Lanham Act.

83.     ENAC has engaged in false advertising in violation of the Illinois Deceptive Trade Practices Act.

84.     ENAC's actions are deliberate, willful, and calculated to mislead consumers and to unfairly compete with Endurance.

85.     ENAC has acted with knowledge of the falsity of their statements.

86.     ENAC's concerted conduct and scheme have caused and continues to cause substantial harm to Endurance, its sales, its goodwill, and its business reputation.

87.     All told, ENAC is causing, threatening, and/or will continue to cause or threaten significant irreparable harm to Endurance, including the loss of long-standing customer relationships, loss of goodwill, loss of value of Endurance's trademarks, as well as damage to Endurance's reputation as an industry leader and its ability to successfully market its goods and services. Money alone cannot make Endurance whole.

## COUNT I
### VIOLATION OF LANHAM ACT, SECTION 43(A), 15 U.S.C. §1125(A) – FALSE OR MISLEADING DESCRIPTION OF FACT AS TO ENDURANCE

88.     Endurance hereby repeats, realleges, and incorporates by reference the allegations that are contained in Paragraphs 1 through 87.

89.     ENAC's conduct, as described herein, constitutes false and misleading representations of fact in commercial advertising or promotion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90.     ENAC has intentionally made false and misleading statements to consumers including that: (a) the customer's Endurance policy is "red flagged"; (b) Endurance is going out of business; (c) Endurance is bankrupt; (d) Endurance is not paying its claims; (e) Endurance's policies

are no longer in effect; (f) the consumer's vehicle is no longer covered by Endurance; (g) ENAC is "part of" Endurance; and (h) Endurance is issuing refunds and consumers are supposed to switch plans and enter into new vehicle service contracts with ENAC.

91. Each of these statements is literally false, material, and likely to deceive consumers and influence purchasing decisions by diverting customers from Endurance to ENAC for the purchase of a vehicle service contract.

92. ENAC's false and misleading statements have caused and continue to cause injury to Endurance, including loss of sales, diverted business, damage to goodwill, and harm to its business reputation and the value of its marks.

93. Endurance is entitled to recover its actual damages and ENAC's profits, as well as temporary, preliminary, and permanent injunctive relief, enhanced damages, punitive damages, costs, and attorneys' fees.

## COUNT II
### VIOLATION OF LANHAM ACT, SECTION 32, 15 U.S.C. § 1114 – INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS

94. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 87.

95. ENAC's use and continued use of the Endurance trademark in commerce in connection with the offering for sale of vehicle service contract products is likely to cause, and has in fact caused, confusion, mistake, or deception.

96. ENAC is operating, maintaining, paying for, bidding on keywords for, or are otherwise affiliated with websites, web pages, and/or online web advertisements, holding themselves out to be "Endurance."

97. ENAC is using these websites, web pages, and/or online web advertisements in

commerce in connection with the offering for sale of vehicle service contracts in a way that is likely to cause and has, in fact, caused, confusion, mistake, and deception as to the true owner and user of Plaintiff's "Endurance" mark and as to the true seller and administrator of the vehicle service contract service provided by Plaintiff Endurance.

98. On information and belief, ENAC is purchasing "Endurance" and derivations of that mark as keyword search terms for the purpose of promoting these deceptive "Endurance" websites.

99. ENAC is purchasing the Endurance keywords in order to drive Endurance customers to contact ENAC, instead of Endurance, as the customers intend.

100. ENAC is holding themselves out as the owner, operator, and/or affiliate of Endurance.

101. In holding themselves out as "Endurance," ENAC is causing consumers to believe ENAC is affiliated, associated with, or are Endurance.

102. In holding themselves out as "Endurance," ENAC is feeding off of Endurance's existing customers and contractual relationships.

103. In holding themselves out as "Endurance," ENAC is interfering with Endurance's contractual relationships.

104. ENAC does not have permission to use the Endurance mark.

105. ENAC's use of the Endurance mark is intentional and willful.

106. Specifically, ENAC has knowingly, willfully, and intentionally used Endurance's mark on internet search engines, including Google and Bing!, to advertise their vehicle service contracts through misleading websites holding themselves out to be "Endurance," trading on the substantial goodwill and recognition of Endurance's mark by consumers in conjunction with vehicle service contracts.

107. ENAC's knowing and intentional use of the Endurance mark in keyword advertising and website ads does, and was intended to cause confusion, to cause mistake, and to deceive consumers about the source of its competing vehicle service contracts.

108. Such conduct is and has led consumers to fall victim to confusion, believing that the ENAC's advertisements are associated with, affiliated with, provided by, and/or endorsed by Endurance.

109. Indeed, numerous consumers, after calling the number that ENAC held out as "Endurance," believed that ENAC had "intercepted" their calls.

110. Trading on the success of the Endurance mark and Endurance's name recognition, ENAC knowingly, willfully, and intentionally used and are using the Endurance mark in keyword searches and online advertising to exploit Endurance's reputation, as well as the time, effort, and expense Endurance has invested in building its brand, which ENAC exploited to infringe the Endurance mark.

111. As a result of the unlawful conduct of ENAC, Endurance has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless ENAC's actions are enjoined by this Court. Endurance has suffered and will continue to suffer substantial damage to its reputation, goodwill, and sales.

112. Endurance is entitled to, among other relief, injunctive relief and an award of its actual damages (or, in the alternative, statutory damages pursuant to 15 U.S.C. § 1117(c)), ENAC's profits, enhanced damages and profits, costs, and attorney's fees.

## COUNT III
### DECEPTIVE TRADE PRACTICES – 815 ILCS §§ 510/1, *ET SEQ.*

113. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 87.

114. ENAC has knowingly and willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.*, by disparaging the goods, services, and/or business of Endurance through the use of false or misleading representations of fact.

115. The foregoing acts of ENAC constitute willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 *et seq.*, for which Endurance is entitled to injunctive relief, attorneys' fees, and costs.

116. The foregoing acts of ENAC will create a likelihood of injury to the public image and business reputation of Endurance in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.*, for which Endurance is entitled to injunctive relief.

117. The foregoing acts of ENAC were designed intentionally to mislead and deceive the public in violation of 815 ILCS §§ 510/1 *et seq.*, for which Endurance is entitled to injunctive relief.

118. The false and misleading statements made by ENAC are causing and is likely to cause substantial injury to the public and to Endurance.

## COUNT IV
### (ILLINOIS COMMON LAW – DEFAMATION PER SE)

119. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 87.

120. ENAC's statements about Endurance are false.

121. ENAC has published their statements about Endurance's ongoing viability, specifically their claim that Endurance is going out of business, to third-party consumers.

122. ENAC made these statements with actual knowledge or reckless indifference to their truth or falsity.

123. Upon information and belief, ENAC's conduct was and continues to be willful, intentional, and in bad faith.

124. ENAC's acts have caused, and continue to cause, damage to Endurance.

125. Endurance is entitled to recover its damages.

## COUNT V
### (ILLINOIS COMMON LAW – TORTIOUS INTERFERENCE WITH CONTRACT)

126. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 87.

127. Endurance sells vehicle service contracts to consumers.

128. ENAC has knowledge of the contractual relationships between Endurance and consumers, as ENAC references these contracts in their sales calls with Endurance customers.

129. During those calls, ENAC intentionally instructs customers how to cancel their Endurance contracts after purchasing ENAC's contracts, and in so doing ENAC provides false information about Endurance to induce the customers to terminate their contracts with Endurance.

130. ENAC intentionally induces Endurance customers to terminate their contracts with Endurance. ENAC's interference is improper as they do so through false and misleading statements.

131. ENAC's conduct was willful and malicious and was done with an intent to harm Endurance.

132. As a direct result, Endurance has suffered and will continue to suffer monetary losses in an amount to be proven at trial. In an addition to remedies in equity, Endurance seeks actual, incidental, compensatory, punitive, exemplary, and consequential damages, as well as attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Endurance Warranty Services, L.L.C. seeks judgment in its favor

and an Order against Defendant Exclusive National Auto Club LLC, for the following relief:

A.      Temporarily, preliminarily and permanently enjoining, without bond, ENAC from utilizing false and deceptive practices including claiming that : (a) there was a "red flag" on the consumer's Endurance policy; (b) Endurance is going out of business; (c) Endurance is bankrupt; (d) Endurance is not accredited by the Better Business Bureau; (e) Endurance is not paying its claims; (f) Endurance's policies are no longer in effect; (g) the consumer's vehicle is no longer covered by Endurance; (h) ENAC is "part of" Endurance; and (i) because of this, Endurance is issuing refunds and consumers are supposed to switch plans and enter into new vehicle service contracts with ENAC;

B.      Temporarily, preliminarily and permanently enjoining, without bond, ENAC from operating, maintaining, paying for, or being affiliated in any way with any website, web advertisement, or online search engine web page holding itself out to be affiliated with Endurance in any way, including, but not limited to, being "Endurance;"

C.      Awarding Endurance actual, incidental, compensatory, and consequential damages to be proven at trial;

D.      Awarding Endurance exemplary or punitive damages in an amount to be proven at trial due to ENAC's willful and malicious activities;

E.      Awarding Endurance its reasonable attorney's fees and costs; and

F.      Awarding Endurance such further relief as the Court deems necessary and just.

DATED: June 2, 2026                  Respectfully submitted,

**ENDURANCE WARRANTY SERVICES, L.L.C.**

By: */s/ Justin K. Beyer*        
        One of Its Attorneys

Justin K. Beyer (justin.beyer@saul.com)
Steven M. Malitz (steven.malitz@saul.com)
Joseph M. Kuo (josph.kuo@saul.com)
**Saul Ewing LLP**
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
Telephone: (312) 876-7100

*Attorneys for Plaintiff Endurance Warranty Services, L.L.C.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, does hereby certify that he caused a true and correct copy of the foregoing Plaintiff's Complaint with Exhibits A-D to be placed in the hands of a process server for service on this 2nd day of June, 2026.

/s/ Justin K. Beyer
Justin K. Beyer

57793591.1